UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

LUZ MARIA CORREA CORTES,

      Plaintiff,

v.                                                                              CIVIL NO. SA-16-CV-578-PM

CAROLYN W. COLVIN, Acting
Commissioner of the Social Security
Administration,

      Defendant.

## MEMORANDUM DECISION AND ORDER

Pursuant to the consent of the parties in the above-styled and numbered cause of action to trial by the undersigned United States Magistrate Judge,[1] and consistent with the authority vested in the United States Magistrate Judges under the provisions of 28 U.S.C. § 636(c)(1) and Appendix C, Rule 1(i) of the Local Rules for the Assignment of Duties to United States Magistrate Judges in the Western District of Texas, the following memorandum decision and order is entered.

## I.  JURISDICTION

The Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II.  BACKGROUND and SUMMARY OF PROCEDURAL HISTORY

This is an action to review a decision of the Commissioner of the Social Security Administration under § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).  Plaintiff Luz Maria Correa Cortes initiated this action pursuant to 42 U.S.C. § 405(g) seeking review of the determination of Carolyn W. Colvin, the acting Commissioner of the Social Security

---

[1] Docket nos. 5, 9, 10.

Administration, that plaintiff is not disabled and not entitled to receive disability insurance benefits ("DIB").

Plaintiff protectively filed an application for Title II DIB on July 21, 2014, alleging disability since August 8, 2013.[2]  The Social Security Administration ("SSA") denied DIB initially on December 29, 2014,[3] and upon reconsideration on April 23, 2015.[4]  On November 19, 2015, Peter F. Gazda, an administrative law judge ("ALJ"), held a hearing and considered plaintiff's claims *de novo*.[5]  Plaintiff was not represented by an attorney at the hearing.[6]  The ALJ received testimony from plaintiff as well as from medical expert Sharon Rogers ("ME") and vocational expert Tammy Donaldson ("VE").[7]  The ALJ issued a written opinion on February 3, 2016, denying benefits and finding that plaintiff had not been disabled from August 9, 2013, through the date of the decision.[8]  Plaintiff requested Appeals Council review of the ALJ's decision, and on January 13, 2016, the Council concluded that no basis existed to grant review.[9]  Thus, the ALJ's determination became the final decision of the Commissioner.

Plaintiff filed an appeal of the Commissioner's determination and, on October 6, 2016,

---

[2]  Transcript ("TR") at 179-182.

[3]  Id. at 105-108.

[4]  Id. at 110-111.

[5]  Id. at 39-64.

[6]  Id. at 41-42.

[7]  Id. at 39-64.

[8]  Id. at 23-33.

[9]  Id. at 1-3.

filed an opening brief raising three main issues, summarized below, asking the Court to reverse the Commissioner's decision.[10]  On November 16, 2016, the Commissioner filed a responsive brief, arguing, in sum, that the ALJ's decision is supported by proper legal standards and substantial evidence.[11]  On December 9, 2016, plaintiff filed a reply brief.[12]

### III.  ISSUES

1.     Whether substantial evidence supports the ALJ's decision that plaintiff was not disabled under the Social Security Act.

2.     Whether the decision comports with relevant legal standards.

### IV.  STANDARD OF REVIEW

In reviewing the Commissioner's decision, the Court is limited to a determination of whether the decision is supported by substantial evidence and whether the Commissioner applied the proper legal standards in evaluating the evidence.[13]  Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.[14]  It must do more than create a suspicion of the existence of the fact to be established, but "no substantial evidence" will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence.[15]

---

[10]  Docket no. 8.

[11]  Docket no. 11.

[12]  Docket no. 14.

[13]  Boyd v. Apfel, 239 F.3d 698, 704 (5th Cir. 2001).

[14]  Id.

[15]  Abshire v. Bowen, 848 F.2d 638, 640 (5th Cir. 1988).

If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed.[16]  "The court does not re-weigh the evidence in the record, try the issues *de novo*, or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision."[17]  Conflicts in the evidence are for the Commissioner to resolve.[18]  Four elements of proof are weighed in determining if substantial evidence supports the Commissioner's determination:  (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education and work experience.[19]

## V.  ALJ'S FINDINGS AND PLAINTIFF'S CONTENTIONS

### A.    Summary of the ALJ's Decision

The ALJ stated the issue was whether plaintiff was disabled pursuant to sections 216(i) and 223(d) of the Social Security Act.[20]  The ALJ defined disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, or combination of impairments, that could be expected to result in death, or that has lasted, or can be expected to last, for a continuous period of not less than twelve months.[21]  The ALJ noted there was an additional issue with respect to plaintiff's claim for a period of

---

[16]  Martinez v. Chater, 64 F.3d 172, 173 (5th Cir. 1995).

[17]  Carey v. Apfel, 230 F.3d 131, 135 (5th Cir. 2000).

[18]  Id.

[19]  Martinez, 64 F.3d at 174.

[20]  TR at 23.

[21]  Id.

disability—whether the insured status requirements of sections 216(i) and 223 were met.[22]  The ALJ found plaintiff's earnings record showed plaintiff had acquired sufficient quarters of coverage to remain insured through December 31, 2018.[23]  Thus, according to the ALJ, plaintiff needed to establish disability on or before that date to be entitled to a period of disability and DIB.[24]

The ALJ next explained the five-step sequential evaluation process for determining whether an individual is disabled, and noted that the steps are to be followed in order.[25]  The ALJ then analyzed whether plaintiff met the criteria for disability pursuant to these steps and made findings of facts and conclusions of law.[26]

**Step 1 findings.**  The ALJ determined plaintiff had not engaged in substantial gainful activity since the alleged onset date of August 9, 2013.[27]

**Step 2 findings.**  The ALJ found plaintiff had the severe impairments of post lumbar laminectomy syndrome, asthma, gastroesophageal reflux disease, migraines, arthritis in the bilateral knees and arthralgias, history of surgery to repair a torn rotator cuff, depression, and

---

[22] Id.

[23] Id.

[24] Id.

[25] Id. at 24-25 (citing 20 C.F.R. §§ 404.1509, 404.1512(g), 404.1520(a)-(g), 404.1521, 404.1525, 404.1526, 404.1545, 404.1560(b) and (c), 404.1565, 404.1572(a) and (b), 404.1574, 404.1575 and Social Security Rulings ("SSR") 85-28, 96-3p, 96-4p, 96-8p).

[26] Id. at 25-33.

[27] Id. at 25 (citing 20 C.F.R. § 404.1571, et seq.).

anxiety.[28]

**Step 3 findings.**  The ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the impairments listed in "20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526)."[29]  The ALJ expressly considered listings sections "1.02, 1.04, 3.03, 5.00, 11.00 (reference only), 12.04, and 12.06."[30] The ALJ stated "[t]he severity criteria of any of [the listings noted] have not been satisfied here" and further explained his findings.[31]

Specifically, with respect to the issues raised in plaintiff's brief, in considering listing 1.04, the ALJ determined "there are no findings in the evidence of record" showing the claimant "suffered from a disorder of the spine, which had resulted in compromise of a nerve root or the spinal cord, or any nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis and associated symptoms."[32]

The ALJ also determined "the severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04 and 12.06."[33]  In making this finding, the ALJ considered whether the 'paragraph B' criteria were satisfied, which requires the mental impairment to result in at least two of the following: marked

---

[28]  Id. at 26 (citing 20 C.F.R. § 404.1520(c)).

[29]  Id.

[30]  Id.

[31]  Id. at 26-27.

[32]  Id. at 26.

[33]  Id.

restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration.[34]   The ALJ noted that "[a] marked limitation means more than moderate but less than extreme."[35]   The ALJ determined "[i]n activities of daily living, the claimant has mild restriction;"[36] "[i]n social functioning, the claimant has mild difficulties;"[37] "[w]ith regard to concentration, persistence or pace, the claimant has moderate difficulties;"[38] and "the claimant has experienced no episodes of decompensation, which have been of extended duration."[39]

The ALJ also stated he "considered whether the 'paragraph C' criteria are satisfied."[40] The ALJ determined "the evidence fails to establish the presence of 'paragraph C' criteria."[41]

**Residual functional capacity finding.**  Having determined that plaintiff suffered from severe impairments that did not meet or equal a listed impairment, and before considering step 4, the ALJ proceeded to assess plaintiff's RFC.[42]   The ALJ stated that he had considered all of

---

[34]   Id.

[35]   Id.

[36]   Id. at 27.

[37]   Id.

[38]   Id.

[39]   Id.

[40]   Id.

[41]   Id.

[42]   Id. at 28-32.

plaintiff's symptoms and the extent to which her symptoms could "reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. § 404.1529 and SSRs 96-4p and 96-7p."[43]  The ALJ confirmed that he had considered the opinion evidence, as required by 20 C.F.R. § 404.1527 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.[44]  The ALJ also indicated that he had used the two-step process applicable to RFC determinations in considering the claimant's symptoms.[45]

The ALJ assessed plaintiff with the following RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform less than a full range of sedentary work as defined in 20 CFR 404.1567(a).  Specifically, the claimant can lift and/or carry ten pounds occasionally and less than ten pounds frequently, stand and/or walk two hours in an eight-hour workday, and sit six hours in an eight-hour workday.  However, the claimant is further limited to occasional stooping and crouching, no balancing, kneeling, or crawling, occasional climbing of ramps and stairs, and no climbing of ladders, ropes, or scaffolds.  Additionally, she is limited to occasional overhead reaching with the left upper extremity, no exposure to unprotected heights or dangerous moving machinery, humidity or extreme temperature changes, and pollutants such as dusts, fumes, or gases.  She is also limited to work in low stress environment, defined as occasional decision-making and occasional changes in a work setting (in light of moderate limitations in concentration, persistence, or pace, as discussed herein and in accordance with the evidence of record, discussed below).  However, the claimant can interact appropriately with supervisors, coworkers, and the public.  Finally, the claimant

---

[43] Id. at 28.

[44] Id.

[45] Id.  Under the two-step process, the ALJ must first determine "whether there is an underlying medically determinable physical or mental impairment(s) . . . that could reasonably be expected to produce the claimant's pain or other symptoms."  Id.  Second, the ALJ "must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functioning."  Id.  The ALJ noted that "whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence," the ALJ "must make a finding on the credibility of the statements based on a consideration of the entire case record."  Id.

has mild to moderate chronic pain, which is of sufficient severity to be noticeable to her at all times, but she would be able to remain attentive and responsive in a work setting and could carry out normal work assignments satisfactorily.  The claimant also takes medications to relieve the symptoms, but the medications do not preclude her from functioning at the level indicated and she would remain reasonably alert to perform required functions presented by the work setting.  While functioning at this level, the claimant will find it necessary to shift positions in order to relieve her symptoms.[46]

The ALJ considered the claimant's allegations that she was unable to sustain full-time employment due to numerous issues "[u]pon application (and appeal) for disability benefits," "including arthritis and multiple joint pain and inflammation (such as the knees and shoulders), spinal degeneration, a torn rotator cuff, migraines, asthma, cysts, gastrointestinal problems, depression, and anxiety, with poor concentration."[47]  The ALJ also considered the claimant's "associated symptoms such as chronic pain and fatigue, exertional and postural restrictions, muscle stiffness, dizziness, the use of a brace, poor memory/focus, asthma attacks, racing thoughts, panic attacks, and diminished activities of daily living."[48]  The ALJ noted the claimant's testimony at the hearing "reported similar complaints, though she focused her complaints on her asthma, migraines, back pain and alleged radiculopathy and difficulty sitting, standing, or walking."[49]  But, the ALJ concluded that "the medical evidence of record does not support the severity level of her symptoms as alleged."[50]  In support of the RFC assessment, the

---

[46] Id. at 28 (citing 20 C.F.R. §§ 404.1545, 404.1567(a), 416.945; SSRs 96-8p).

[47] Id. at 28-29 (citing Ex. 1E1-2).

[48] Id. at 29 (citing Exs. 4E, 6E2, 9E, 17E4-9, and 22E3-4).

[49] Id.

[50] Id.

ALJ discussed the following medical evidence of record specific to the issues raised in plaintiff's brief.

The ALJ stated there was evidence of treatment for "migraines (status post-botox injections)."[51]   The ALJ considered "[p]rogress notes through the end of 2013" which "noted no cardio or respiratory distress, no other signs of being in acute distress, full strength, no focal neurological deficits, and normal sensory response, no depression or anxiety, no back pain and "a normal gait."[52]   The ALJ determined that "[t]hese findings would surely seem to contradict the claimant's multiple assertions."[53]   The ALJ also considered "in early 2014, several treatment notes revealed largely unremarkable physical exam findings (including . . . 'no musculoskeletal symptoms,' a euthymic mood and normal affect, good neurological responses, and no signs of being in acute distress, other than alleged chronic sinusitis)."[54]   The ALJ further considered "[o]n July 21, 2014, a complete review of symptoms was entirely negative, except for a cough, and on physical examination, the only discernable problem consisted of 'mild expiratory wheezes to auscultation,' with intact range of motion in all extremities, and no gross motor or sensory deficits."[55]

The ALJ noted "[f]ollow up progress notes (from the Veterans Admin., or VA) through late 2014 showed" "new evidence of lumbar spine degenerative disc disease (of unknown

---

[51]   Id. (citing Exs. 3F1015, 1095-99, 1130).

[52]   Id. (citing Exs. 2F71, 73, 80-81, 88, and 5F140-141).

[53]   Id.

[54]   Id. (citing Exs. 3F241-81, and 5F67, 114-116).

[55]   Id. (citing Ex. 4F41-47).

severity) and limitation on range of motion (less than one-third of normal)," but "sensation and muscle strength were normal in all joints evaluated (hips, knees, ankles, and toes), and the claimant did not need the use of an assistive device for ambulation, except that there was a positive straight leg raise on the right."[56]   The ALJ further noted "[t]he treating source (Dr. Wilfredo Rodriguez-Arboleda, M.D.) stated simply that the claimant's condition would preclude gainful employment."[57]   The ALJ gave "little weight" to this statement "because the longitudinal history of his relationship with the claimant was undetermined, and he failed to detail the severity of the claimant's alleged condition (and the record, as a whole does not support such limitations, as detailed herein)."[58]   The ALJ further stated that "on October 10, 2014, another treating source assessed the claimant's bilateral acromioclavicular osteoarthritis as mild."[59]

The ALJ considered claimant's September 10, 2014 consultative exam "with chief complaints of various physical and mental conditions, including back and shoulder problems, arthritis in both knees, her shoulders, and back, limited mobility, migraines, chronic sinusitis and asthma, and depression and anxiety."[60]   The ALJ noted that, despite these allegations, claimant "reportedly could help her mother with household chores and she could drive a car (there was no nexus between an alleged mental disorder and decreased activities of daily living), and social

---

[56] Id. at 29-30 (citing Ex. 15F21-32).

[57] Id. at 30.

[58] Id. (citing Ex. 15F32).

[59] Id. (citing Ex. 15F166).

[60] Id. (citing Exs. 9F1-2 and 24F3-5).

11

judgment and 'common sense' were intact."[61]  The mental status exam "revealed intact

concentration, memory, attention, social function, and general knowledge, and her prognosis was

good (with treatment); final diagnoses were major depressive disorder and generalized anxiety

disorder."[62]  The ALJ determined the exam "only supports limitations such as work in low stress

environment, defined as occasional decision-making and occasional changes in a work setting (in

light of moderate limitations in concentration, persistence, or pace), as cited above (and

consistent with the treatment notes of record)."[63]

　　　　The ALJ considered the claimant's October 22, 2015 neurological exam, "which noted

that her gait was antalgic, but she could walk on heels and toes."[64]  But, the ALJ noted the exam

showed "back range of motion was mildly to moderately decreased to extension, flexion, and

lateral movements (by about one-third)."[65]  The ALJ stated "[t]hese findings were supported by

attached medical imaging, which revealed" "evidence of a disketomy and lateral fixation with the

metallic plate at the L2-3."[66]  The ALJ noted "[t]here was a visible prosthesis at the L2-3

intervertebral space, and narrowing of the L4-5 and L5-S1 intervertebral spaces, but no

spondylosis and the facet joints appear normal."[67]  The examiner, Dr. Winston Ortiz, M.D.,

---

[61]  Id. (citing Ex. 24F4-5).

[62]  Id. (citing id.).

[63]  Id.

[64]  Id. (citing Ex. 12F1-7).

[65]  Id. (citing Ex. 12F5-6).

[66]  Id. (citing Ex. 12F7).

[67]  Id. (citing id.).

"assessed the claimant unable to perform jobs *requiring heavy lifting and carrying*, walking long distances, standing and sitting *for prolonged periods* and bending frequently, but he further noted that handling objects, hearing and speaking were not impaired."[68]  The ALJ determined Dr. Ortiz's assessment "is consistent with an ability to perform no more than sedentary level exertion" "because such residual functional capacity does not require the movements and exertion precluded by Dr. Ortiz's opinion, which was, therefore given greater weight (although greater siting abilities is supported by the record)."[69]

The ALJ considered "[p]rogress notes throughout early 2015 revealed no evidence of a new or worsening medical condition, based on various physical exams, and she reportedly did not experience any generalized pain or malaise."[70]  The ALJ further considered "[a]s of July 21, 2015, [the claimant's] general medical condition appeared stable, except she complained of chronic pain and depression and anxiety related to her physical impairments; still no worsening symptomatology was documented."[71]

The ALJ, considering "[t]he totality of the medical evidence of record," determined that there "is some evidence of migraines (only intermittent), arthritis in the knees (stable), a history of GERD (controlled), mild asthma, mild to moderate depression and anxiety, a moderate decrease in lower back mobility, mildly limited shoulder movements, and what appears to be at

---

[68]  Id. at 30-31 (emphasis in original) (citing Ex. 12F2).

[69]  Id. at 31.

[70]  Id. (citing Exs. 15F83-109, 17F68, and 22F38, 60).

[71]  Id. (citing Ex. 25F1-2).

most mild to moderate pain."[72]  The ALJ further determined "the medical record clearly notes that the claimant's general medical condition remains stable."[73]  The ALJ found "the claimant's statements concerning the intensity, persistence and limiting effects of [claimant's alleged] symptoms are not entirely credible."[74]  The ALJ stated, "[f]or example, the intensity and persistence of her alleged pain and symptoms are not consistent with the medical findings," "and her activities of daily living, as alleged,[75] are not in accord with the objective severity level of the impairments or pain."[76]  The ALJ noted that "the claimant reported pre-hearing that she did not have any mental or nervous condition (contradicting her prior allegations)."[77]

The ALJ considered the testimony of the ME, who stated "the claimant has a history of depression and anxiety, aggravated by her alleged physical condition."[78]  The ME opined "that the claimant's mental condition does not meet or equal a listing, with mild limitation in activities of daily living, moderate limitations in social functioning and concentration, persistence of

---

[72] Id.

[73] Id.

[74] Id.

[75] The ALJ stated "[t]he claimant reported largely independent functioning in [activities of daily living]."  Id. at 27.  Specifically, claimant reported "[s]he could help her mother with household chores and she could drive a car, and she reported that she could prepare simple meals, travel as needed (including walking), pay bills, and perform such chores as cleaning, laundry, and ironing)."  Id.

[76] Id. (citing Exs. 17E and 20E).

[77] Id. (citing Ex. 19E3).

[78] Id. at 32.

pace."[79]   The ALJ gave "significant weight" to the ME's testimony, finding that the ME "had the opportunity to evaluate the longitudinal history of the medical evidence of record, and her opinion is consistent with the objective findings, except that the record does not support moderate limitations in social functioning."[80]

Regarding opinion evidence, the ALJ gave "little weight" to the "State agency's assessments (light exertion and non-severe mental impairments), because the record as a whole is strongly indicative of greater limitations than noted by the state (the consultants also did not have access to the entire record)."[81]   But, the ALJ noted that "the concluding opinions pertaining to disability contained herein are consistent with the ones reached at the initial and reconsideration levels of disability determination."[82]

**Step 4 findings.**   The ALJ determined that the claimant "is capable of performing past relevant work as an order clerk" and that "[t]his work does not require the performance of work-related activities precluded by the claimant's [RFC]."[83]   The ALJ noted that the VE testified "a hypothetical person with the claimant's age, education, past relevant work experience, and [RFC] cited above" could perform claimant's past job as an order clerk (D.O.T. #249.362-026).[84] Accordingly, the ALJ found that plaintiff had not been under a disability, as defined by the Social

---

[79] Id.

[80] Id.

[81] Id. (citing Exs. 1A and 2A).

[82] Id. (citing SSR 96-6p).

[83] Id. (citing 20 C.F.R. § 404.1565).

[84] Id.

Security Act, from August 9, 2013, through the date of ALJ's decision.[85]

**B.      Plaintiff's Contentions**

Plaintiff raises three main arguments in support of her request for reversal or remand of the Commissioner's decision.  First, plaintiff argues "[t]he ALJ impermissibly ignored reviewers in the Veterans' Administration who found that [plaintiff] was over 100% disabled and also unemployable."[86]  Second, plaintiff argues "[t]he ALJ failed to perform the required six factor analysis of the treating physicians' opinions as set forth in 20 C.F.R. § 404.1527(d) before failing to give controlling weight to the opinions."[87]  Third, plaintiff argues "[t]he Appeals Council failed to remand this case to the ALJ when medical evidence was presented to it which could have reversed the opinion of the ALJ."[88]

## VI.  ARGUMENTS and CONCLUSIONS OF LAW

In this section the Court will discuss in greater detail the applicable legal standards before applying those standards to plaintiff's specific claims as raised in her brief.

**A.      Entitlement to Benefits**

Every individual who is insured for disability insurance benefits, has not attained retirement age, has filed an application for benefits, and is under a disability is entitled to receive disability insurance benefits.[89]  Each aged, blind or disabled individual who meets certain income

---

[85]  Id. at 33 (citing 20 C.F.R. § 404.1520(f)).

[86]  Docket no. 8 at 5.

[87]  Id.

[88]  Id.

[89]  42 U.S.C. § 423(a)(1).

and resources limitations is entitled to receive supplemental security income.[90]  The term

"disabled" or "disability" means the inability to engage in any substantial gainful activity by

reason of any medically determinable physical or mental impairment, which can be expected to

result in death, or which has lasted or can be expected to last for a continuous period of not less

than 12 months.[91]  A person shall be determined to be under a disability only if her physical or

mental impairment or impairments are of such severity that she is not only unable to do her

previous work but cannot, considering her age, education, and work experience, engage in any

other kind of substantial gainful work existing in significant numbers in the national economy,

regardless of whether such work exists in the immediate area in which she lives, or whether a

specific job vacancy exists for her, or whether she would be hired if she applied for work.[92]

**B.    Evaluation Process and Burden of Proof**

Regulations set forth by the Commissioner prescribe that disability claims are to be

evaluated according to a five-step process.[93]  A finding that a claimant is disabled or not disabled

at any point in the process is conclusive and terminates the Commissioner's analysis.[94]  The first

step involves determining whether the claimant is currently engaged in substantial gainful

activity.  If so, the claimant will be found not disabled regardless of her medical condition or her

age, education, and work experience.  The second step involves determining whether the

---

[90]  Id. § 1382 (a).

[91]  Id. § 1382c(a)(3)(A).

[92]  Id. § 1382c(a)(3)(B).

[93]  20 C.F.R. §§ 404.1520 and 416.920.

[94]  Leggett v. Chater, 67 F.3d 558, 564 (5th Cir. 1995).

claimant's impairment is severe.  If it is not severe, the claimant is deemed not disabled.  In the

third step, the Commissioner compares the severe impairment with those on a list of specific

impairments.  If it meets or equals a listed impairment, the claimant is deemed disabled without

considering his age, education, and work experience.  If the impairment is not on the list, the

Commissioner, in the fourth step, reviews the claimant's RFC and the demands of her past work.

If she can still do this kind of work, she is not disabled.  If she cannot perform her past work, the

Commissioner moves to the fifth and final step of evaluating the claimant's ability, given her

residual capacities and her age, education, and work experience, to do other work.  If she cannot

do other work, she will be found to be disabled.  The claimant bears the burden of proof at the

first four steps of the sequential analysis.[95]  Once she has shown that she is unable to perform her

previous work, the burden shifts to the Commissioner to show that there is other substantial

gainful employment available that claimant is capable of performing.[96]  If the Commissioner

adequately points to potential alternative employment, the burden then shifts back to the claimant

to prove that she is unable to perform the alternative work.[97]

---

[95]  Id.

[96]  Anderson v. Sullivan, 887 F.2d 630, 632 (5th Cir. 1989).

[97]  Id. at 632-33.

**C.      Plaintiff's Claims in Appealing the ALJ's Decision**

**1.      Whether the ALJ impermissibly ignored the Veterans' Administration ("VA") rating that plaintiff was over 100% disabled and unemployable**

Plaintiff argues the ALJ "never mentioned the VA ratings" in his decision and, therefore, does not "address the fact that the VA disability raters awarded [plaintiff] the status of 'individual unemployability'" or take into account plaintiff's rating of "over 100%" disability at the time of the hearing.[98]  In response, the Commissioner argues plaintiff mischaracterizes the finding of "individual unemployability" as "a medical determination of full disability rather than an administrative finding by the VA that she cannot perform full work" and plaintiff cites no authority that the Commissioner is required to consider plaintiff's 80% "partial disability rating in the same manner as a rating of 100% disability."[99]  In reply, plaintiff argues the conclusion of "individual unemployability" was based on the findings of plaintiff's treating physician.[100]  Further, plaintiff's reply acknowledges a 80% VA rating, but argues it was "paid at 100%" and "a difference of 20% rating does not make [plaintiff's] VA rating evidence [] immune to any review or any consideration."[101]

The Fifth Circuit has held that the Commissioner is not legally bound by a VA disability rating because the two agencies apply different criteria, "but [the rating] is evidence that is

_____

[98]  Docket no. 8 at 6.

[99]  Docket no. 11 at 5-6.

[100]  Docket no. 14 at 3-4.

[101]  Id. at 3.

entitled to a certain amount of weight and must be considered by the ALJ."[102]  But, "the relative weight to be given this type of evidence will vary depending upon the factual circumstances of each case . . . and ALJs need not give 'great weight' to a VA disability determination if they give adequate reasons for doing so."[103]  An ALJ's disagreement with the VA's finding of disability is not reversible error if the record reflects consideration of that finding.[104]  "[T]he VA's actual 'disability' determination is not what is significant to the ALJ; rather, it is the reasoning and medical records that support the VA's finding."[105]

Plaintiff cites to a February 23, 2015 letter from the VA in support of her arguments.[106] The February 23 VA letter states plaintiff is entitled to individual unemployability benefits because plaintiff "is unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities."[107]  But, a VA finding of "individual unemployability," is not entitled to deference because, as discussed, the criteria applied by the VA and the SSA in making disability determinations is different.[108]  Further, "individual unemployability" is a non-medical

---

[102]  Chambliss v. Massanari, 269 F.3d 520, 522 (5th Cir. 2001).

[103]  Id. at 522.

[104]  See Welch v. Barnhart, 337 F.Supp.2d 929, 935 (S.D. Tex. 2004) (citing Chambliss, 269 F.3d at 522).

[105]  Branton v. Astrue, No. 1:11-CV-085-BL-ECF, 2012 WL 4813833, at *3 (N.D. Tex. Apr. 27, 2012), report and recommendation adopted, No. 1:11-CV-085-C, 2012 WL 4813771 (N.D. Tex. Oct. 10, 2012).

[106]  TR 134-150.

[107]  Id. at 137.

[108]  Chambliss, 269 F.3d at 522.

opinion "based upon vocational, rather than medical factors."[109]  The final responsibility for

deciding "the application of vocational factors" "is reserved to the Commissioner."[110]

The February 23 VA letter also states plaintiff's combined VA disability rating is 80%

effective March 7, 2012.[111]  The letter lists the following claimed medical issues as the basis for

plaintiff's disability rating: (1) "lumbar degenerative disc disease status post discectomy and

fusion also claimed as back and spine"—40%; (2) right radiculopathy lower extremity—10%; (3)

migraine headaches—30%; (4) "depression to include stress and anxiety"—50%; and (5)

sinusitis—10%.[112]  The February 23 VA letter also provides a list of medical records the VA

considered in making its decision.[113]

Although the ALJ's decision referenced plaintiff's treatment through the VA[114] and

discussed VA medical records,[115] the ALJ did not discuss plaintiff's VA disability rating.  As

noted, "[the rating] is evidence that is entitled to a certain amount of weight and must be

---

[109] Barraza v. Barnhart, 61 F. App'x 917, at *1 (5th Cir. 2003) (citing Loya v. Heckler, 707 F.2d 211, 214 (5th Cir.1983) (holding that opinions from medical professionals based upon vocational considerations are not authoritative); and 20 C.F.R. § 404.1527(e)(2)).

[110] 20 C.F.R. § 404.1527(d)(2).

[111] TR 145.

[112] Id. at 136-145.  The February 23 letter also notes colon polyps, nephrolithiasis, "residuals, status post fracture of left pubic ramus," as claimed medical issues, but the VA determined these issues were 0 percent disabling.  Id. at 137-139.

[113] Id. at 148-149.

[114] Id. at 19 (The ALJ stated "[f]ollow up progress notes (from the Veterans Admin., or VA) through late 2014, showed no significant signs of symptom aggravation . . . (Ex. 15F14, 21-32, 158-169)).

[115] Id. at 29 (citing Ex. 4F41-47; 15F14, 21-32, 158-169), 30 (citing Ex. 15F28-32, 166), and 31 (citing Ex. 15F83-109).

considered by the ALJ."[116]   But, because the VA and the SSA because apply different criteria,[117] "the VA's actual 'disability' determination is not what is significant to the ALJ; rather, it is the reasoning and medical records that support the VA's finding."[118]

Here, the ALJ discussed each of the claimed medical issues resulting in plaintiff's VA disability rating, and the medical records concerning each of the claimed issues.  With respect to plaintiff's lumbar degenerative disc disease and radiculopathy of plaintiff's right lower extremity—which the VA determined was "related to the service-connected disability of lumbar degenerative disc disease"—the ALJ determined at step two that post lumbar laminectomy syndrome was a severe impairment.[119]   In determining the RFC, the ALJ considered "[f]ollow up progress notes (from the Veterans Admin., or VA) through late 2014, showed . . . new evidence of lumbar spine degenerative disc disease (or unknown severity) and limitation on range of motion (less than one-third of normal)."[120]   The ALJ also considered the October 22, 2014 report of claimant's neurological exam, which indicated "back range of motion was motion was mildly to moderately decreased to extension, flexion, and lateral movements."[121]   The ALJ noted

---

[116]   Chambliss, 269 F.3d at 522.

[117]   Id.

[118]   Branton, 2012 WL at *3.

[119]   TR 26.

[120]   Id. at 29 (citing Ex. 15F14, 21-32, 158-169).  The February 23 VA letter considered the document located at Ex. 15F21-32 in determining plaintiff's VA disability rating.  Id. at 148 ("we considered: . . . Back DBQ examination, San Juan VAMC facility, dated February 12, 2015").

[121]   Id. at 30 (citing Ex. 12F5-6).

"[t]hese findings are supported by attached medical imaging, which revealed . . . evidence of a diskectomy and lateral fixation with the metallic plate at the L2-3," "visible prosthesis at the L2-3 intervertebral space, and narrowing of the L4-5 and L5-S1 intervertebral spaces, but no spondylosis and the facet joints appear normal."[122]  The ALJ concluded "the totality of the medical evidence of record" shows "there is some evidence of . . . a moderate decrease in lower back mobility."[123]  Taking plaintiff's lumbar degenerative disc disease and radiculopathy of plaintiff's right lower extremity into consideration in determining the RFC, the ALJ limited plaintiff to "sedentary level exertion," and further limited plaintiff to "occasional stooping and crouching, no balancing, kneeling or crawling, occasional climbing of ramps and stairs, and no climbing of ladders, ropes, or scaffolds, due to back and knee problems, and in light of her pain complaints."[124]

With respect to plaintiff's migraine headaches, the ALJ determined at step two that migraine headaches were a severe impairment.[125]  In determining the RFC, the ALJ considered plaintiff's "evidence of treatment for . . . migraines (status post-botox injections)."[126]  The ALJ also considered the report of a September 10, 2014 psychological consultative examination with "chief complaints of various physical and mental conditions, including . . . migraines."[127]  The

---

[122]  Id. (citing Ex. 12F7).

[123]  Id. at 31.

[124]  Id.

[125]  Id. at 26.

[126]  Id. at 29 (citing Ex. 7F1015, 1095-99, 1130).

[127]  Id. at 30 (citing Ex. 9F1-4, 24F3-5).

ALJ concluded "the totality of the medical evidence of record" shows "there is some evidence of migraines (only intermittent)."[128]  Taking plaintiff's migraines into consideration in determining the RFC, the ALJ limited plaintiff to "no exposure to unprotected heights or dangerous moving machinery, humidity or extreme temperature changes, and pollutants such as dusts, fumes, or gases (given her history of . . . migraines)."[129]

With respect to plaintiff's "depression to include stress and anxiety," the ALJ determined at step two that plaintiff's depression and anxiety were a severe impairment.[130]  In determining the RFC, the ALJ considered the report of a September 10, 2014 psychological consultative examination with "chief complaints of various physical and mental conditions, including . . . depression and anxiety"[131] and Dr. Torres' final diagnoses of major depressive disorder and generalized anxiety disorder."[132]  The ALJ also considered progress notes in early 2015, which "revealed no evidence of new or worsening medical condition."[133]  The ALJ concluded "the totality of the medical evidence of record" shows "mild to moderate depression and anxiety."[134]  Taking plaintiff's depression and anxiety into consideration in determining the RFC, the ALJ

---

[128]  Id. at 31.

[129]  Id.

[130]  Id. at 26.

[131]  Id. at 30 (citing Ex. 9F1-4, 24F3-5).

[132]  Id. (citing Ex. 24F4-5).

[133]  Id. at 31 (citing Ex. 15F94-97).  The February 23 VA letter considered the document located at Ex. 15F94-97 in determining plaintiff's VA disability rating.  Id. at 148-49 ("we considered: . . . Mental DBQ examination, San Juan VAMC facility, dated February 12, 2015").

[134]  Id. at 31.

limited plaintiff to "work in [a] low stress environment, defined as occasional decision-making and occasional changes in a work setting (in light of moderate limitations in concentration, persistence, or pace)."[135]

With respect to plaintiff's sinusitis, the ALJ considered early 2014 treatment notes discussing plaintiff's sinusitis,[136] and the report of a September 10, 2014 psychological consultative examination with "chief complaints of various physical and mental conditions, including . . . chronic sinusitis."[137]  The ALJ also considered progress notes in early 2015, which "revealed no evidence of new or worsening medical condition."[138] Although the ALJ did not further discuss plaintiff's sinusitis, the RFC includes a limitation that plaintiff should have "no exposure to . . . humidity or extreme temperature changes, and pollutants such as dusts, fumes, or gases."[139]

The ALJ did not find plaintiff to be disabled, which indicates that the ALJ considered the impairments forming the basis of the VA rating and effectively chose not to give the VA rating great weight.  But, the ALJ's decision clearly reflects that the ALJ considered the impairments associated with the VA disability rating in reviewing plaintiff's medical records and determining

---

[135]  Id. at 28.

[136]  Id. at 29, 30.

[137]  Id. at 30 (citing Ex. 9F1-4, 24F3-5).

[138]  Id. at 31 (citing Ex. 15F100-105).  The February 23 VA letter considered the document located at Ex. 15F100-105 in determining plaintiff's VA disability rating.  Id. at 148 ("we considered: . . . Sinus DBQ examination, San Juan VAMC facility, dated February 12, 2015").

[139]  Id. at 28.

the RFC.  Plaintiff has not demonstrated the ALJ committed legal error.

### 2.   Whether the ALJ accorded proper weight to plaintiff's treating physician's opinion

Plaintiff argues the "ALJ assigned inadequate weight to the opinion of the claimant's treating doctor, Dr. Wilfredo Rodriguez-Arboleda" and "failed to follow the required six factor analysis of the treating physician's opinion that must be performed before rejecting opinions."[140] In response, the Commissioner argues "a physician's statement that a claimant is 'disabled' or otherwise unable to work, by itself, is not a medical opinion but rather a legal conclusion on an issue reserved to the Commissioner" and "may be rejected without the analysis usually applied to a medical opinion."[141]  In reply, plaintiff argues the Commissioner "mischaracterizes the argument made in Plaintiff's Original Brief" and plaintiff did not argue that the medical opinion of Dr. Rodriguez-Arboleda "should be adopted by the ALJ, but that the ALJ dismissed this treating physician's testimony in the medical record without observing the required procedure."[142]

It is well settled in the Fifth Circuit that the ALJ has the sole responsibility in determining whether a claimant is disabled[143] and is entitled to determine the credibility of the medical experts, as well as lay witnesses, and to weigh their opinions accordingly.[144]  Indeed, as already

---

[140]  Docket no. 8 at 6-7.

[141]  Docket no. 11 at 7.

[142]  Docket no. 14 at 4.

[143]  20 C.F.R. § 404.1527(e)(1).

[144]  Griego v. Sullivan, 940 F.2d 942, 945 (5th Cir. 1991); Moore v. Sullivan, 919 F.2d 901, 905 (5th Cir. 1990) (Commissioner will consider doctor's opinion but determination of

noted, this Court is not to re-weigh the evidence or resolve conflicts in the evidence.  The

regulations provide that when a treating source's opinion is well-supported by medically

acceptable clinical or laboratory diagnostic techniques and is not inconsistent with other

substantial evidence in the record, it is entitled to controlling weight.[145]  The ALJ, however, is

free to reject the opinion of any physician when the evidence supports a contrary conclusion, or

when an opinion is brief, conclusory, or not supported by medically acceptable clinical or

laboratory diagnostic techniques.[146]

     In Newton v. Apfel,[147] the Fifth Circuit held that absent reliable medical evidence from a

treating or examining physician controverting the plaintiff's treating physician, an ALJ may

reject or give little weight to the treating physician's opinion only if the ALJ performs a detailed

analysis of the factors listed in § 404.1527(d).[148]  In sum, the relevant factors under

§ 404.1527(d) are:

1.     The length of the treatment relationship and the frequency of examination;
2.     The nature and extent of the treatment relationship;
3.     The relevant evidence such as medical signs and laboratory findings to support the opinions;
4.     The opinion's consistency with the record as a whole;
5.     Whether the medical opinion is given by a specialist about medical issues related to his or her area of specialty; and

---

disability rests solely with Commissioner.).

[145]  20 C.F.R. § 404.1527(d)(2).

[146]  Id. § 404.1527(d)(2).  See also Brown v. Apfel, 192 F.3d 492, 500 (5th Cir. 1999).

[147]  209 F.3d 448 (5th Cir. 2000).

[148]  Id. at 456-57.

6.     Any other relevant factors that tend to support or contradict the opinion.[149]

It should be noted that Newton is inapplicable when there is competing first-hand medical

evidence and the ALJ finds as a factual matter that one doctor's opinion is more well-founded

than another.[150]  Nor does it apply when the ALJ weighs the treating physician's opinion on

disability against the medical opinion of other physicians who have treated or examined the

claimant and have specific medical bases for a contrary opinion.[151]  Also, the analysis required by

Newton applies to medical opinion rendered by a treating physician, not to a legal opinion that

the claimant is disabled or unable to work.[152]

As an initial matter, although plaintiff asserts Dr. Rodriguez-Arboleda was "claimant's

treating doctor,"[153] plaintiff provides no citation to the record establishing Dr. Rodriguez-

Arboleda was treating plaintiff.[154]  The SSA defines a "treating source" as "your own physician,

psychologist, or other acceptable medical source who provides you, or has provided you, with

medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with

---

[149]  Id. (citing 20C.F.R. § 404.1527(d)(2), pertaining to disability benefits claimants).  See also id. § 416.927(d) (pertaining to SSI benefits claimant); SSR 96-2p (discussing SSA's regulations on giving controlling weight to a treating physician's opinion).

[150]  Newton, 209 F.3d at 458.

[151]  Id.

[152]  Frank v. Barnhart, 326 F.3d 618, 620 (5th Cir. 2003).

[153]  Docket no. 8 at 6.

[154]  Although the ALJ refers to Dr. Rodriguez-Arboleda as a "treating source" (TR 30), the ALJ's citations to the record also do not indicate Dr. Rodriguez-Arboleda was treating plaintiff.

you.[155]  Further, the SSA defines a "nontreating source" as:

> a physician, psychologist, or other acceptable medical source who has examined
> you but does not have, or did not have, an ongoing treatment relationship with
> you. The term includes an acceptable medical source who is a consultative
> examiner for us, when the consultative examiner is not your treating source.[156]

Dr. Rodriguez-Arboleda's health summary report lists Dr. Rodriguez-Arboleda as an

"[e]xamining provider," undertaking a "orthopedic surgery C&P examination consult."[157]  The

"method used to obtain medical information to complete" the report is an "[i]n-person

examination"—Dr. Rodriguez-Arboleda did not review available records.[158]  Plaintiff provides

no argument, authority, or evidence that Dr. Rodriguez-Arboleda had an ongoing treatment

relationship with plaintiff, such that Dr. Rodriguez-Arboleda should be considered to be

plaintiff's treating physician.

But, even if Dr. Rodriguez-Arboleda is considered to be plaintiff's treating physician, a

review of the record indicates the ALJ applied proper legal standards in considering Dr.

Rodriguez-Arboleda's opinions.  With respect to Dr. Rodriguez-Arboleda's findings,[159] the ALJ

stated:

> Follow up progress notes (from the Veterans Admin., or VA) through late 2014,
> showed no significant signs of symptom aggravation, other than . . . new evidence
> of lumbar spine degenerative disc disease (of unknown severity) and limitation on
> range of motion (less than one-third of normal) ([Ex. 15F21-32]).  However,

---

[155]  20 C.F.R. § 404.1502.

[156]  Id.

[157]  TR 2126.

[158]  Id. at 2125-2126.

[159]  Id. at 2125-2137 (Ex. 15F20-32).

sensation and muscle strength were normal in all joints evaluated (hips, knees, ankles, and toes), and the claimant did not need the use of an assistive device for ambulation, except that there was a positive straight leg raise on the right . . . ([Ex. 15F28-32]).[160]

The ALJ concluded:

The treating source (Dr. Wilfredo Rodriguez-Arboleda, M.D.) stated simply that the claimant's condition would preclude gainful employment. Little weight was given to his statement because the longitudinal history of his relationship with the claimant was undetermined, and he failed to detail the severity of the claimant's alleged condition (and the record, as a whole, does not support such limitations, as detailed herein) ([Ex.] 15F32). Moreover, on October 10, 2014, another treating source assessed the claimant's bilateral acromioclavicular osteoarthritis as mild ([Ex.] 15F166).[161]

As noted, Newton is inapplicable when there is competing first-hand medical evidence and the

---

[160] Id. at 29-30.

[161] Id. at 30. Plaintiff argues that the ALJ's basis for giving "little weight" to Dr. Rodriguez-Arboleda's opinion—that "on October 10, 2014, another treating source assessed the claimant's bilateral acromioclavicular osteoarthritis as mild"—is "without a basis in fact" because: (1) Dr. Rodriguez-Arboleda's February 12, 2015 opinion is after the October 10, 2014 unnamed treating source's opinion; and (2) Dr. Rodriguez-Arboleda's opinion concerns "the arthritic changes of the thoracolumbar back," and the unnamed treating source's opinion concerns "the shoulder (acromioclavicular area)." Docket no. 8 at 7. But, plaintiff's arguments do not account for the fact the ALJ provided reasons for the weight he accorded to Dr. Rodriguez-Arboleda's opinion, namely: (1) "the longitudinal history of his relationship with the claimant was undetermined;" (2) Dr. Rodriguez-Arboleda "failed to detail the severity of the claimant's alleged condition;" and (3) "the record, as a whole, does not support such limitations." TR 30. This Court will "not re-weigh the evidence in the record, try the issues de novo, or substitute its judgment for the Commissioner's." Carey, 230 F.3d at 135.
    Plaintiff also argues the ALJ's determination that plaintiff did not meet the criteria of listing 1.04 at step two "is questionable," given Dr. Rodriguez-Arboleda's findings. Docket no. 8 at 7-8. Listing 1.04, titled "Disorders of the spine," requires evidence showing, in part: "(e.g. herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthristis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord." 20 C.F.R. § 404, Subpt. P. App. 1, 1.04. The ALJ determined "[t]here is no evidence the claimant suffered from a disorder of the spine, which had resulted in compromise of a nerve root or the spinal cord." TR 26. Plaintiff does not identify any evidence in the record that shows claimant's nerve root or spinal cord were compromised or that Dr. Rodriguez-Arboleda found that claimant's nerve root or spinal cord were compromised.

ALJ finds as a factual matter that one doctor's opinion is more well-founded than another[162] or

when the ALJ weighs the treating physician's opinion on disability against the medical opinion

of other physicians who have treated or examined the claimant and have specific medical bases

for a contrary opinion.[163]   Here, the ALJ gave "great weight" to Dr. Ortiz's opinion, noting that

Dr. Ortiz, an examining physician, determined "back range of motion was mildly to moderate

decreased to extension, flexion, and lateral movements (by about one-third)."[164]   Dr. Ortiz's

findings were supported "by attached medical imaging, which revealed . . . evidence of a

diskectomy and lateral fixation with the metallic plate at the L2-3."[165]   The ALJ noted the

medical imaging also showed "a visible prosthesis at the L2-3 intevertebral space, and narrowing

of the L4-5 and L5-S1 intervertebral spaces, but no spondylosis and the facet joints appear

normal."[166]   The ALJ also considered that Dr. Ortiz "assessed the claimant was unable to perform

jobs *requiring heavy lifting and carrying*, walking long distances, standing and sitting *for

prolonged periods* and bending frequently, but he further noted that handling objects . . . were

not impaired."[167]   The ALJ determined Dr. Ortiz's assessment "is consistent with an ability to

perform no more than sedentary level exertion . . . because such residual functional capacity does

---

[162]   Newton, 209 F.3d at 458.

[163]   TR 30-31.

[164]   Id. at 30 (citing Ex. 12F5-6).

[165]   Id. (citing Ex. 12F7).

[166]   Id. (citing id.).

[167]   Id. at 30-31 (emphasis in original) (citing Ex. 12F2).

not require the movements and exertion precluded by Dr. Ortiz's opinion."[168]  The ALJ was

entitled to weigh Dr. Rodriguez-Arboleda's opinion on disability[169] against the medical opinion

of Dr. Ortiz—who examined plaintiff and had specific medical bases for a contrary opinion—and

determine that Dr. Ortiz's opinion was more well-founded than Dr. Rodriguez-Arboleda.  This

Court will "not re-weigh the evidence in the record, try the issues *de novo*, or substitute its

judgment for the Commissioner's, even if the evidence weighs against the Commissioner's

decision."[170]  Based on a review of the record, substantial evidence supports the ALJ's finding.

---

[168]  Id. at 31.

[169]  Plaintiff argues the ALJ "just dismissed [Dr. Rodriguez-Arboleda's] opinion about employability with 'little weight,' rather than re-contacting him as required under SSR 96-5p. Docket no. 8 at 8. "SSR 96–5p requires recontact solely when both (a) the record fails to support a treating source's opinion, and (b) the basis of the treating source's opinion is unascertainable from the record."  Alejandro v. Barnhart, 291 F. Supp. 2d 497, 512 (S.D. Tex. 2003) (citing SSR 96–5p, 1996 WL 374183, *6).  The ALJ does not express confusion regarding the basis of Dr. Rodriguez-Arboleda's opinion.  Rather, he concludes that the purported basis for Dr. Rodriguez-Arboleda's opinion does not lend any support to the opinion.  SSR 96-5p does not apply in this instance.

Plaintiff also argues "[t]here was no medical expert for physical medicine at the hearing to review the statements of Dr. Rodriguez-Arboleda" and, therefore, the "ALJ substituted his own non-medical opinion for that of a treating specialist."  Id. at 8.  To the extent plaintiff is arguing that the ALJ failed to properly develop the record by not having a medical expert testified at the hearing, plaintiff has not shown that she "could and would have adduced evidence that might have altered the result."  Carey, 230 F.3d at 145 (ALJ's decision will not be reversed for failure to develop the record unless a plaintiff can establish prejudice by showing that she "could and would have adduced evidence that might have altered the result.").

[170]  Carey, 230 F.3d at 135.  Moreover, the analysis required by Newton applies to medical opinion rendered by a treating physician, not to a legal opinion that the claimant is disabled or unable to work.  Frank v. Barnhart, 326 F.3d 618, 620 (5th Cir. 2003). Determinations that an applicant is "disabled" or "unable to work" are legal conclusions that the regulation describes as "reserved to the Commissioner."  Id. (citing 20 C.F.R. § 404.1527(e)(1)). The ALJ was not required to perform the Newton analysis with respect to Dr. Rodriguez-Arboleda's statement that plaintiff was "preclude[d] [from] gainful employment."  TR 2137.

### 3.      Whether the Appeals Council erred in failing to remand the case to the ALJ when medical evidence was presented to it which could have reversed the opinion of the ALJ

After the November 19 hearing, plaintiff submitted additional medical records which pre-date the hearing.[171]  Plaintiff argues the Appeals Council should have "remand[ed] these new records to the ALJ for his consideration" "since they expound on the severity of the claimant's medical problems, specifically her migraines, and introduce the new diagnosis of Chronic Eosinophilic Pneumonia."[172]  Specifically, with respect to the chronic eosinophilic pneumonia diagnosis, plaintiff argues although her eosinophilic pneumonia pre-dates the hearing, "now that the problem is deemed chronic," the ALJ should consider the "side effects and the consequences of having a chronic disease rather than a discrete episode of pneumonia."[173]  In response, the Commissioner argues "The Appeals Council considered whether the additional evidence provided a basis for changing the ALJ's decision, and determined that it did not," and "this Court does not possess jurisdiction over a claim of error directed at an Appeals Council action rather than the Commissioner's final administrative decision."[174]  In reply, plaintiff argues "[a]ll the evidence not reviewed by the ALJ, and only submitted to the Appeals Council is to be considered" by the district court.[175]

When a claimant submits new and material evidence that relates to the period before the

---

[171]  Docket no. 8 at 8-9.

[172]  Id. at 9.

[173]  Id.

[174]  Docket no. 11 at 8.

[175]  Docket no. 14 at 9.

date of the ALJ's decision, the Appeals Council must consider the evidence in deciding whether

to grant a request for review.[176]  New evidence submitted to the Appeals Council becomes part of

the record upon which the Commissioner's decision is based.[177]  A court considering the Appeals

Council's decision must review the record as a whole to determine whether the Commissioner's

decision is supported by substantial evidence, and should remand only if the new evidence

dilutes the record to such an extent that the ALJ's decision becomes unsupported.[178]

With respect to plaintiff's pneumonia, the ALJ considered plaintiff's May 28, 2015

medical records—which referenced plaintiff's potential chronic eosinophilic pneumonia

diagnosis[179]—stating plaintiff "experienced some respiratory exacerbation (possibly linked to

sub-segmental and infectious pneumonia)."[180]  The ALJ found "[a]s of July 21, 2015, [plaintiff's]

general medical condition appeared stable . . . no worsening symptomatology was

documented."[181]  The records submitted to the Appeals Council dated June 7, 2015, reflect that

plaintiff was "treated by pulmonary at SAMMC" for chronic eosinophilic pneumonia and allergic

bronchopulmonary aspergilloisis, was "discharged from a hospital stay on 30 May 15 for this

condition," and plaintiff "states that she is feeling much better now."[182]  The medical records

---

[176]  20 C.F.R. § 404.970(b).

[177]  Higginbotham v. Barnhart, 405 F.3d 332, 337 (5th Cir. 2005).

[178]  Higginbotham v. Barnhart, 163 F. App'x 279, 281-82 (5th Cir. 2006).

[179]  TR 2666.

[180]  Id. at 31 (citing Ex. 23F1-2).

[181]  Id. (citing Ex. 25F1-2).

[182]  Id.  More recent November 10, 2015 medical records reflect plaintiff "reports recently returning from a Carribean cruise that include[d] touring islands with Volcanos/smoke and

reflect plaintiff's chronic eosinophilic pneumonia has responded to treatment, and "[a] medical condition that can reasonably be remedied either by surgery, treatment, or medication is not disabling."[183]

With respect to plaintiff's migraines, plaintiff testified that she has migraines "every month" and "[s]ometimes they last . . . three to four days."[184]  As treatment for her migraines, plaintiff testified she takes medication, "stay[s] in bed in a dark room" and sometimes "put cold things, sometimes . . . hot things to try to alleviate the pressure."[185]  The ALJ also considered plaintiff's July 12, 2013 medical records[186] which state:

> Mrs. Correacortes is a 52 yo female sent by Dr. Leidner for a trial of boutulinum toxin injections for her chronic daily headaches in April.  The patient has a history of migraine headaches, but has had daily bitemporal throbbing headaches for at least the last 4-5 years.  Pain severity for her daily headaches ranges from a 6-10/10 daily. . . . Ms. Correacortes returns to the clinic today and her headaches are no better following her first injections.[187]

As discussed, the ALJ considered plaintiff's testimony and medical records regarding plaintiff's migraines, and took them into account in determining the RFC.[188]  Medical records submitted to the Appeals Council dated November 18, 2016—documenting a medical appointment occurring

---

reported no complaints or symptoms.  She denied any wheezes, sob, dyspnea, cough or sputum production.  Overall, reports feeling much improved."  Id. at 2741.

[183]  Vereen v. Barnhart, No. SA-05-CA-10-XR, 2005 WL 3388136, at *5 (quoting Lovelace v. Bowen, 813 F.3d 55, 59 (5th Cir. 1987)).

[184]  TR 52.

[185]  Id.

[186]  Id. at 29 (citing Ex. 3F1095).

[187]  Id. at 1590.

[188]  See text at notes 125-129.

the day prior to plaintiff's November 19 testimony—reflect that plaintiff:

> has a long-standing history of migraines but is now having almost daily headaches.  She experiences photophobia, phonophobia, and light-headedness with migraines.  Laying down in a dark room helps manage pain.  Changes in air pressure are a trigger for migraines.  Current medications include nortriptyline, buspar, effexor, magnesium, and vitamin D . . . . She started on depakote for headache prevention but discontinued due to heart palpitations and feeling jittery. Botox injections have not been helpful and she has tried multiple medications in the past.[189]

The evidence contained in the medical records submitted to the Appeals Council is consistent with plaintiff's testimony and the medical records reviewed by the ALJ, which the ALJ explicitly considered in his decision.[190]

The new evidence provided by plaintiff to the Appeals Council does not dilute the record.[191]  The ALJ considered plaintiff's testimony and the medical evidence regarding plaintiff's pneumonia and migraines.  The ALJ's decision is supported by substantial evidence.

## VII.  CONCLUSION

Because the ALJ did not commit reversible error and his decision is supported by substantial evidence, plaintiff's request to reverse the ALJ's decision or remand the case[192] is **DENIED** and the Commissioner's decision is **AFFIRMED**.  The District Clerk is requested to enter final judgment in favor of defendant and against plaintiff, each side to bear its own costs.

---

[189]  TR 2738.  The November 18 records also state the "Reason for Consult" is "Chronic [headaches], failed BOTOX all other meds."  Id.  at 2736.  Although the November 18 records state "failed BOTOX all other meds," plaintiff testified she is taking medication for her migraines.  Id. at 52.

[190]  Id. at 29.

[191]  Higginbotham, 163 F. App'x at 281–82.

[192]  Docket no. 8 at 9.

**ORDERED, SIGNED** and **ENTERED** this 12th day of December, 2016.

*Pamela A. Mathy*

**PAMELA A. MATHY**
**UNITED STATES MAGISTRATE JUDGE**